**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA, ex rel., and FLFMC, LLC,

Plaintiffs,

v.

OHIO ART COMPANY,

Defendant.

Case No. 2:10-cv-00230-LPL

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE UNDER 28 U.S.C. §1404(a)**

## I. INTRODUCTION

Defendant The Ohio Art Company (identified as "Ohio Art Company" above) (hereinafter "Ohio Art") respectfully submits this Brief in support of its motion to transfer this action from the Western District of Pennsylvania to the Northern District of Ohio, Toledo Division.[1] The Court should grant Ohio Art's motion and transfer this action for at least the following reasons: (1) the Plaintiff's choice of forum carries little, if any, weight in a *qui tam* action where the harm (if any) was felt by the United States and not the relator; (2) Ohio Art's corporate headquarters are located in the Northern District of Ohio; (3) any events giving rise to the lawsuit took place in the Northern District of Ohio; (4) all of the key witnesses reside in the

---

[1] This Brief supports one of three motions that Ohio Art has filed today: (1) a Motion to Dismiss under Rule 12(b)(1) for lack of standing under Article III of the Constitution because FLFMC, LLC cannot demonstrate a sufficient concrete and particularized injury to confer standing; (2) a Motion to Dismiss the complaint to the extent it seeks to recover for alleged damages beyond the five-year limitations period; and (3) a Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a), because the balances of the conveniences weighs heavily in favor of transferring this case to the Northern District of Ohio, Toledo Division. In the interest of judicial economy, Ohio Art respectfully suggests that the Court consider the Motion to Transfer first, so that the same district that hears the merits of the case can address the remaining substantive motions.

Northern District of Ohio or nearby in Northeast, Indiana; (5) all of the records and other evidence are located at Ohio Art's headquarters in the Northern District of Ohio; and (6) the remaining factors involving the interests of justice favor transfer to the Northern District of Ohio.

## II. FACTUAL BACKGROUND[2]

### A. The *Forest Group* Decision and the Resulting "Cottage Industry"

In late 2009, the Federal Circuit decided Forest Group v. Bon Tool Co., 590 F.3d 1295 (Fed. Cir. 2009) and clarified that the patent False Marking Statute (the "Statute") imposes penalties on a "per article" basis. Id. at 1304 (citing 35 U.S.C. §292). This "per article" basis coupled with the Statute's $500 maximum penalty for each offense creates the possibility of staggering monetary penalties. See 35 U.S.C. §292(a) (providing fines shall be "not more than $500 for every such offense."). Because the Statute allows for a 50/50 split of the monetary penalty between the *qui tam* relator and the U.S. Government, possible personal gain exists for private plaintiffs. See Donald J. Rupert, Trolling for Dollars: A New Threat to Patent Owners, 21 No. 3 Intell. Prop. & Tech L.J. 1 (2009) (cited in Forest Group, 590 F.3d at 1303); see also 35 U.S.C. §292(b) (providing "one-half shall go to the person suing and the other to the use of the United States.").[3] The recent decision effectively opened the barn door allowing a stampede of false marking suits against manufacturers who market thousands, or even millions of patented products each year. Indeed, the Forest Group decision has created a cottage industry for

[2] The facts and information for this Brief are contained in public records regarding the Relator (Ex. 1), publicly-available information regarding the Relator's law firm (Ex. 2), the Affidavit of paralegal Rebecca D. Johnson (Ex. 3), the Affidavit of William C. Killgallon, Ohio Art's Chairperson (Ex. 4), and Federal Judicial Caseload Statistics (Ex. 5). All of these materials are attached to the accompanying motion to transfer.

[3] Whether the Statute itself is constitutional is currently the subject of an appeal before the Federal Circuit in Stauffer v. Brooks Bros., 615 F. Supp. 2d 248 (S.D.N.Y. 2009) (appeal pending). The Federal Circuit in Brooks Brothers is also considering whether relators who suffer no pecuniary loss (like the relator here) have standing to bring a claim.

plaintiffs to seek out and bring claims against patent-holders even if that plaintiff has suffered no concrete or particularized injury.[4] According to a March 29, 2010 article, "more than 100 plaintiffs have filed false marking suits in 2010, on the heels of" the Forest Group decision. Nick Brown, House Bill Seeks Amend False Marking Remedies IP Law 360 (Mar. 26, 2010). This matter is one of those cases.

**B. The Relator/Plaintiff: FLFMC, LLC**

According to public records, Plaintiff FLFMC, LLC ("FLFMC") was organized on January 29, 2010 by Joshua M. Farber, Esq. (Ex. 1).[5] According to his Internet biography, Mr. Farber is an associate attorney at the law firm of Meyer, Unkovic & Scott LLP of Pittsburgh, Pennsylvania. (Ex. 2). Meyer, Unkovic & Scott LLC is also counsel of record for FLFMC in this lawsuit.

---

[4] It is worth noting that the Senate, in the Patent Reform Act of 2010, proposed to clarify the Statute to read:

> "(b) A person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate the injury."

The House has also provided similar legislation. See H.R. 4954. If passed, the amendment would apply to pending cases:

> (a) IN GENERAL.—Subsection (b) of section 292 of title 35, United States Code, is amended to read as follows: "(b) A person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury."
>
> (b) EFFECTIVE DATE.—The amendment made by subsection (a) shall apply to all cases, without exception, pending on or after the date of the enactment of this Act.

[5] In other words, FLFMC was formed 32 days after the Federal Circuit's decision in Forest Group.

The nature of FLFMC's business is unclear. Representatives of Ohio Art have searched public records but have not located the names or identities of the members of FLFMC or a description of the entity's business. (Ex. 3: Johnson Aff., ¶ 6). A search of the Court's PACER system, however, reveals that FLFMC has filed the following other actions in the Western District of Pennsylvania alleging false marking in violation of 35 U.S.C. §292:

| **CASE NO.** | **DEFENDANT** | **DATE FILED** |
|---|---|---|
| 2:2010-cv-00231 | EBSCO Industries, Inc., et al | 02/17/2010 |
| 2:2010-cv-00229 | ACE Hardware Corporation | 02/17/2010 |
| 2:2010-cv-00287 | WHAM-O, Inc., et al (dismissed without prejudice and refiled as referenced below) | 03/02/2010 |
| 2:2010-cv-00420 | William Bounds, Ltd. | 03/29/2010 |
| 2:2010-cv-00435 | WHAM-O, Inc. (refiled under different patent) | 04/01/2010 |
| 2:2010-cv-00437 | T.F.H. Publications, Inc. | 04/01/2010 |

(Id., ¶ 3). Though these cases involve different patents and different products, FLFMC is alleging that each of these products are falsely marked after the expiration of their respective patents. (Id., ¶ 4). FLFMC has not sought injunctive relief in any of these alleged false marking cases, but rather seeks monetary damages pursuant to 35 U.S.C. §292 as well as costs and attorneys' fees to FLFMC. (Id.).

Based upon the foregoing information, FLFMC appears to be in the for-profit business of initiating and litigating *qui tam* actions for alleged false marking against various companies across the county. Before the filing of this lawsuit, Ohio Art was unaware of FLFMC, and Ohio Art and FLFMC are not competitors. (Ex. 4: Killgallon Aff., ¶ 6).

### C. Ohio Art

Among other products, Ohio Art makes and sells toys for children. The company specifically sells the Classic Etch A Sketch® toy, which is the subject of this lawsuit. (Ex. 4: Killgallon Aff., ¶¶ 3-4). The company sold the first Etch A Sketch® in 1960. (Id., ¶ 3).

Ohio Art is an Ohio corporation with its principal place of business in Bryan, Ohio. (Id., ¶¶ 5, 6). The company's headquarters are located at 1 Toy Street, in Bryan, Ohio, and all employees work at this Ohio location. (Id., ¶¶ 7-9). Significantly, Ohio Art has no offices or operations in the Commonwealth of Pennsylvania. (Id., ¶¶ 9, 12). Additionally, Ohio Art does not own real estate in Pennsylvania, nor does it maintain a place of business in the Commonwealth. (Id., ¶¶ 10, 12). As explained in the accompanying materials, the Classic Etch A Sketch® is currently manufactured overseas; however, all relevant documents and exhibits are located at the company's Ohio headquarters. Similarly, all of Ohio Art's witnesses live in or near Bryan, Ohio. (Id., ¶¶ 14-19).

In defending against this lawsuit, Ohio Art will likely call William C. Killgallon, Chairperson of Ohio Art; Martin L. Killgallon III, Senior Vice President of Marketing and Product Development; DeDra Walters, Director of Domestic Sales; John Byrer, Director of Engineering & Product Development; and Arthur Clark, former Vice President of Manufacturing. (Id., ¶ 15). All of these potential witnesses live in or near Bryan, Ohio. (Id.).[6] These individuals participated in the relevant decisions regarding the design, packaging, marketing, and advertisement of the Classic Etch a Sketch® which were made from the Ohio Art headquarters in Bryan, Ohio. (Id., ¶¶ 14-17). Additionally, all of Ohio Art's records regarding the marketing and sale of the Classic Etch A Sketch® are also located at the company's headquarters in Bryan, Ohio. (Id., ¶ 14).

[6] Mr. Byrer resides in Angola, Indiana, which is approximately 35 miles from Ohio Art's headquarters in Bryan, Ohio. (Ex. 4: Killgallon Aff., ¶ 15).

## III. ARGUMENT AND AUTHORITY

### A. Section 1404(a) Standard

Ohio Art is requesting that the Court transfer venue for convenience of the parties and witnesses and the interest of justice pursuant to 28 U.S.C. §1404(a). Section 1404(a) authorizes a district court with proper venue to transfer a case to another district court for "convenience of the parties and witnesses" and "in the interest of justice." Ferrari Importing Co. v. Unique Sports Prods., 2009 U.S. Dist. LEXIS 110742, *9-10 (W.D. Pa. Nov. 27, 2009) (J. Lenihan) (granting Defendant's motion to transfer under 28 U.S.C. 1404(a)) (citing 28 U.S.C. §1404(a)).[7] When considering transfer under 1404(a), courts examine a number of factors including:

(1) the plaintiff's choice of forum;
(2) where the claim arose;
(3) the convenience of the parties;
(4) the convenience of the witnesses and the availability of witnesses through the compulsory process;
(5) the location of documents and other sources of proof;
(6) the local interest in deciding local controversies at home; and
(7) trial efficiency and expense to the justice system

15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE 3D §3847, at 109 (2007). The Third Circuit has split these in considerations into private and public factors. District courts have broad discretion to adjudicate transfer and do so "according to an 'individualized, case-by-

[7] Third Circuit law (including decisions of this Court) provide that the Court has the authority to rule on §1404(a) motions to transfer regardless of the existence of jurisdiction. For example, this Court "has held that §1404(a) is an appropriate authority for discretionary transfer where venue is proper, even if the forum Court lacks personal jurisdiction." Horgos v. Regions Bank, 2009 U.S. Dist. LEXIS 22437, *6 (W.D. Pa. Mar. 19, 2009) (J. Lenihan) (citing U.S. v. Berkowitz, 328 F.2d 358 (3d Cir. 1964)); see also Dollar Savings Bank v. First Security Bank, 746 F.2d 208, 214 (3d Cir. 1984) (holding that if no personal jurisdiction is established, transfer under §1404(a) is not precluded)). Similarly, Ohio Art believes that this Court is empowered to rule on the §1404(a) motion notwithstanding Ohio Art's contemporaneously filed Motion to Dismiss for Lack of Subject Matter Jurisdiction. Indeed, ruling on the transfer motion would not prejudice either party as subject matter jurisdiction cannot be waived. See Fed. R. Civ. P. 12(h)(3).

case consideration of convenience and fairness.'" Elan Suisse Ltd v. Christ, 2006 U.S. Dist. LEXIS 93861, *3 (E.D. Pa. Dec. 29, 2006) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). "The Court must consider each relevant factor in light of the facts of the instant case to determine whether the litigation would more conveniently proceed, and the interests of justice be better served, by transfer of venue." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

**B. The Relator's Choice of Forum is Not Controlling**

The only factor that could possibly favor FLFMC is the decision to file this *qui tam* action in their home district of the Western District of Pennsylvania. However, FLFMC's choice of forum carries little (if any) weight here for at least the following two reasons:

First, FLFMC is a *qui tam* relator which means that if there is a real party in interest, it is the United States. "Accordingly, federal district courts throughout the nation have held that, in *qui tam* actions, the plaintiff's choice of venue is not entitled to the same level of deference as in other actions." United States ex rel. Roop v. Arkray USA, 2007 U.S. Dist. LEXIS 19325, *2 (N.D. Miss. 2007); see also U.S. ex rel. Adrian v. Regents of University of California, 2002 U.S. Dist. LEXIS 3321, at *10-11 (N.D.Cal. 2002) ("a plaintiff's choice of forum is not given substantial weight when the plaintiff is a *qui tam* relator, asserting the rights of the United States government."); United States ex rel. LaValley v. First Nat'l Bank of Boston, 625 F. Supp. 591, 594 (D.N.H.1985) (plaintiffs' choice of forum "should be given relatively little weight" in a *qui tam* action); U.S., ex rel. Penizotto v. Bates East Corp., 1996 U.S. Dist. LEXIS 10316 (E.D. Pa. 1996) (same); U.S. ex rel. Haight v. Catholic Healthcare West, 2001 U.S. Dist. LEXIS 18774, * 4 (N.D. Cal. 2001) (holding that the fact that "the United States, rather than relators, is the real party in interest … lessen[ed] the deference traditionally accorded the plaintiffs' choice of forum."); U.S. ex rel. Swan v. Covenant Care, Inc., 1999 U.S. Dist. LEXIS 15287, at *12 (N.D.

Cal. 1999) (holding that "plaintiffs here are also suing in the name of another, the United States" and that "thus, plaintiff's choice of forum is entitled to little consideration."). In sum, "it seems to be the consensus view among district courts that a plaintiff's choice of forum is entitled to considerably less deference in *qui tam* cases." Arkray USA, Inc., 2007 U.S. Dist. LEXIS 19325, at *2.

Second, the Western District of Pennsylvania is not connected to the allegations and/or events at issue in this lawsuit. While acknowledging that "a plaintiff's choice of venue should not be lightly disturbed," this Court is empowered to alter the plaintiff's choice of forum if the relevant factors tilt in the defendant's favor. Ferrari Importing Co., 2009 U.S. Dist. LEXIS 110742, at *10. See 17 MOORE'S FEDERAL PRACTICE, §111.13[1][d] (Matthew Bender 3d ed.) ("If none of the operative events took place in the district in which the action was originally filed, a motion to transfer to the district in which the events occurred is likely to succeed."). Indeed, "when a majority of both parties' material witnesses are located in the district to which transfer is sought, transfer is likely to be granted despite the fact that the transfer may cause the plaintiff some inconvenience by having to litigate in a forum outside his or her home district." 17 MOORE'S FEDERAL PRACTICE, §111.13[1][f] (Matthew Bender 3d ed.). Applying these principles, the Federal Circuit has routinely held that trial courts should grant a transfer motion when most witnesses and the evidence is closer to the transferee venue and few, if any, convenience factors favor the plaintiff. See also In re Hoffman-LaRouche, 587 F.3d 1333, 1338 (Fed. Cir. 2009); In re Genentech, 566 F.3d 1338, 1348 (Fed. Cir. 2009); In re TS Tech USA, 551 F.3d 1315, 1322 (Fed. Cir. 2008).

As set forth above, FLFMC is a newly formed entity whose apparent business is to initiate *qui tam* actions for alleged false patent marking and to litigate the cases for profit.

FLFMC should have no preference where this action proceeds especially when it has been a resident of the Commonwealth of Pennsylvania for approximately three months. (Ex. 1). Given FLFMC's purpose and the nature of *qui tam* actions, there is no need to allocate any weight to the FLFMC's choice of forum. Conversely, Ohio Art has a strong interest to litigate this matter closer to home in the Northern District of Ohio given the location of its witnesses and documents. See Gallant v. Trustees of Columbia Univ. in the City of New York, 111 F. Supp. 2d 638, 647 (E.D. Pa. 2000) (noting that plaintiff's choice of forum is given less weight where "few, if any, of the operative facts took place in [that] forum . . . . and the defendant has indicated strong preference for another district") (citing National Mortgage Network v. Home Equity Ctr., 683 F. Supp. 116, 119 (E.D. Pa. 1988)). As demonstrated below, Ohio Art's likely relevant documents are located in the Northern District of Ohio all of its possible witnesses are also located in or near the Northern District of Ohio. See also American Littoral Soc. V. U.S. E.P.A., 943 F. Supp. 548, 550 (E.D. Pa. 1996); Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd., 64 F. Supp. 2d 448, 456 (E.D. Pa. 1999) (concluding that transfer to New York was appropriate where many records were retained there, location was more proximate to witnesses who would be deposed, and unquantified additional cost to plaintiff was insufficient to block transfer). All remaining policy factors favor transfer as well. For all of these reasons, FLFMC's choice to file in the Western District of Pennsylvania should be given little, if any, weight in the §1404(a) transfer analysis.

## C. All Remaining Factors Clearly Favor Transfer to the Northern District of Ohio

### 1. The Facts Giving Rise to the Lawsuit All Occurred in Ohio

The location of the operative facts is a component of the §1404(a) transfer analysis. See, e.g., 15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE 3D §3849 at 181-182 ("[t]ransfer to a corporate defendant's place of business is particularly likely in patent . . . cases.")

(citing cases)). As seen from the face of the FLFMC's Complaint, all of its claims arise from Ohio Art's alleged marketing and advertising of the Classic Etch A Sketch® and decisions made regarding this product. (Dkt. #1: Pl.'s Compl., ¶¶ 9-13). All of these activities happened at Ohio Art's Bryan, Ohio headquarters, which is located in the Northern District of Ohio. (Ex. 4: Killgallon Aff., ¶¶ 14-17). As such, this factor, as well as those described below, demonstrate that the events giving rise to this lawsuit occurred in the Northern District of Ohio, and that it should therefore be transferred there. See, e.g., Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 375 (S.D.N.Y 2006) (transferring patent infringement action to location where relevant products were designed and developed).

Whether Etch A Sketch® products have been sold in this District is irrelevant for transfer purposes because Ohio Art's Classic Etch A Sketch® products have been distributed in all 50 states. (Ex. 4: Killgallon Aff., ¶ 13). Ohio Art has not designed any product, including the Classic Etch A Sketch®, specifically for use in the Commonwealth of Pennsylvania. (Id.). In any event, district courts routinely hold that in-forum sales are insufficient to establish a material connection to the forum to preclude transfer. Anchor Wall Sys., Inc. v. R&D Concrete Products, Inc., 55 F. Supp. 2d 871, 874-75 (N.D. Ill. 1999) (granting motion to transfer venue and stating that "[s]ales alone are insufficient to establish a substantial connection to the forum if defendant's goods are sold in many states"); Boreal Laser Inc. v. Coherent, Inc., 22 U.S.P.Q.2d 1559, 1560 (S.D.N.Y. 1992) (granting transfer to Northern California where "facts underlying the cause of action have no material connection to this forum," "relevant documents, records, and production facilities" were in California, and stating that "sales alone are not enough to establish a material connection to the forum if, as is true here, '[d]efendants' goods are sold in many states.'") (quoting Matra Et Manurhin, v. International Armament Co., 628 F. Supp. 1532, 1536 (S.D.N.Y.

1986)); Fairchild Semiconductor Corp. v. Nintendo, 810 F. Supp. 173, 175 (D.S.C. 1992) (finding unpersuasive plaintiff's argument that substantial sales were made in district and stating that "[s]ales alone are generally not enough to establish a material connection to the forum especially if the defendant's goods are sold in many states").

2. All of the Anticipated Witnesses Reside in or Near the Northern District of Ohio

The Federal Circuit recently reasoned that "[t]he convenience of the witnesses is probably ***the single most important factor*** in transfer analysis." In re Genentech, Inc., 566 F.3d at 1343 (emphasis added); see also Kahhan v. City of Fort Lauderdale, 566 F. Supp. 736, 739 (E.D. Pa. 1983) (stating the convenience of the witnesses has been considered a "particularly significant factor"). In another matter addressing transfer, the Federal Circuit explained that:

> Additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

TS Tech, 551 F.3d at 1320 (internal quotations marks omitted).

The bulk of anticipated witnesses in this matter will be current employees of Ohio Art with knowledge of Ohio Art's operations. These Ohio Art witnesses include William C. Killgallon, Ohio Art's Chairman; Martin L. Killgallon, III, Senior Vice President of Marketing and Product Development; DeDra Walters, Director of Domestic Sales; and John Byrer, Director of Engineering and Product Development.[8] (Ex. 4: Killgallon Aff., ¶¶ 15, 18). These Ohio Art representatives may testify regarding facts giving rise to the complaint, such as the marketing, labeling, and advertisement of the Classic Etch A Sketch®, its patent markings, and that Ohio Art did not mark the Classic Etch A Sketch® with intent to deceive. (Id.). As the case proceeds,

[8] As noted above, Mr. Byrer resides in Angola, Indiana, which is approximately 35 miles west of Ohio Art's headquarters. All other Ohio Art employees that may be called as witnesses at this time live in Ohio.

Ohio Art may determine additional Ohio Art employees should serve as witnesses. All of Ohio Art's anticipated witnesses live in or near Bryan, Ohio, which is approximately sixty (60) miles from the Toledo Division federal courthouse in the Northern District of Ohio. (Id., ¶ 20). Conversely, these witnesses would have to travel over approximately 300 miles to Pittsburgh Division of the Western District of Pennsylvania if transfer is not granted. This extra distance would mean additional travel time, expenses, and time away from work for Ohio Art's corporate officers. This expense can be avoided by transferring this matter to the Northern District of Ohio. See TS Tech, 551 F.3d at 1320 (holding that the district court's refusal to allocate more weight to this factor and thus favor transfer was erroneous where failure to transfer would require witnesses to travel approximately 900 miles).

Similarly, non-party witnesses would also be subject to the same additional expense if called to testify. Courts must take a close look at the compulsory process of unwilling witnesses and the costs that those witnesses would incur. United States ex rel. Penizotto v. Bates East Corp., 1996 U.S. Dist. LEXIS 10316 (E.D. Pa. July 18, 1996). At this time, Ohio Art anticipates that Arthur Clark, former Vice President of Manufacturing, will provide testimony in this matter. (Ex. 4: Killgallon Aff., ¶ 16). Mr. Clark lives in Bryan, Ohio. (Id.).

Moreover, and most detrimental to FLFMC's position, Ohio Art is unaware of any critical witnesses who reside in Pennsylvania. (Id., ¶ 20). Accordingly, transfer of venue is appropriate for convenience of the witnesses.

3. The Critical Documents, Books, and Records are in Ohio

Any critical documents, books, records, and other evidence are located in Ohio Art's headquarters in the Northern District of Ohio. (Ex. 4: Killgallon Aff., ¶ 19). Transferring the case from Pittsburgh, Pennsylvania to the Western District of Ohio will reduce the expense to transport any documents. See Irwin v. Zila, Inc., 168 F. Supp. 2d 1294, 1295 (M.D. Ala. 2001)

(recognizing that transporting 80,000 pages of documents "undeniably poses a considerable burden upon Defendants"); Ardco, Inc. v. Page, Ricker, Felson Marketing, Inc., 1992 U.S. Dist. LEXIS 14299, at *17 (N.D. Ill. Sept. 23, 1992) (granting transfer where all of the documents, "including any design documents, manufacturing documents, and marketing and sales documents," and the custodians of these documents were located in the transferee forum). By way of an example, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." Genentech, 556 F.3d at 1345 (quoting Neil Bros. Ltd v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). Similarly, a patent-holder in a false marking lawsuit would possess a lion's share of books, records, and other relevant evidence.

As explained in the Affidavit of William C. Killgallon, Ohio Art's headquarters are located in Bryan, Ohio. (Ex. 4: Killgallon Aff., ¶ 8). Similarly, all marketing, advertisement, and business decisions are made in Bryan, Ohio. (Id., ¶ 14). Indeed, presumably all books, records, and other evidence that FLFMC will seek in this case are also located in Bryan, Ohio; not Pennsylvania. Ohio Art would incur seemingly unnecessary expenses if required to transport or, copy then transport, all discoverable documents to Pittsburgh, Pennsylvania. This expense, however, can be reduced and perhaps avoided by transferring this action to the Northern District of Ohio where an overwhelming majority of the documents reside.

## D. All Trial Considerations Favor Ohio as the Proper Forum for this Action

### 1. Jury Duty Should Not Be Placed on Pennsylvania Citizens

The interests of justice weigh in favor of transferring this matter. The Supreme Court has stated that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947).

Moreover, there is an interest in "having localized controversies decided at home." Gulf Oil, 330 U.S. at 509; see also United States ex rel. Penizotto v. Bates East Corp., 1996 U.S. Dist. LEXIS 10316, *17 (E.D. Pa. July 18, 1996) ("The burden of jury duty ought not be imposed on people of a community who have no relation to the litigation") (citing Ricoh, Co. v. Honeywell, Inc., 817 F. Supp. 473, 486 (D.J.J. 1993)). FLFMC's residence here is the *only* nexus this action has with the Western District of Pennsylvania, and FLFMC has only been a resident of the Commonwealth of Pennsylvania for a mere three (3) months. Conversely, the factual events surrounding the alleged false patent marking claims occurred at Ohio Art's corporate home is in Bryan, Ohio. (Ex. 4: Killgallon Aff., ¶¶ 14-17). In addition, crucial fact witnesses in this action all reside in or near Ohio, with most in the Northern District of Ohio. (Id., ¶¶ 15-17). This litigation's center of gravity is in Northern District of Ohio. Transferring this matter there will serve the interests of justice because the citizens of Ohio have a greater interest in this dispute than the citizens of Pennsylvania. "[T]he administration of justice is served more efficiently when the action is litigated in the forum that more clearly encompasses the locus of operative facts and consequently may have a particular interest in the proper resolution of the dispute." 15 WRIGHT, MILLER & COOPER §3854, at 293. As a general rule in patent cases, "the preferred forum is that which is the center of gravity of the accused activity." Ricoh Co. v. Honeywell, Inc., 817 F. Supp. at 482, n.17.

2. Ohio's Interest in Policing Its Own Corporations

If any state has an interest, it is the State of Ohio in monitoring its corporations to ensure that they establish policies and procedures that protect its citizenry. The district court in Irwin v. Zila, Inc. had to determine whether a securities class action alleging fraudulent misrepresentations should be transferred from Alabama to Arizona. See 168 F. Supp. 2d at 1295. In concluding that the considerations of justice weighed in favor of transfer, the district

court opined that "Arizona has an interest in demanding that its resident corporations adhere to a level of protocol in conducting their business activities, especially when the alleged misdeeds took place within that forum." Id. at 1297. Similarly, the State of Ohio has a more compelling interest than the Commonwealth of Pennsylvania in the adjudication of the allegedly wrongful patent marking activities of an Ohio corporation.

3. Ohio Art's Business Interruption if Transfer Not Granted

Courts also analyze whether business operations will be interrupted in transfer is granted. FLFMC's business operations would not be interrupted by transfer of this litigation because FLFMC is itself in the business of litigation. This litigation and FLFMC's business purpose will not be interrupted if this case proceeds in the Northern District of Ohio, Toledo Division. As demonstrated above, FLFMC was seemingly created for the sole purpose of prosecuting false patent marking claims against companies across the country and will suffer no business interruption if the case proceeds in Ohio. Conversely, Ohio Art would suffer significant business interruption if the transfer motion is not granted. In such an instance, Ohio Art's corporate team and other employees would be required to leave their business in Ohio to participate in Court activities and a trial in Pennsylvania. Regardless of whether transfer is granted, FLFMC can continue business as usual; however, if transfer is denied, Ohio Art will suffer hardship by mobilizing its management team to Pennsylvania. This factor weighs in favor of transfer.

4. Judicial Efficiency Favors Transfer to Northern District of Ohio

When considering the convenience of the witnesses, situs of proof, and all logistical aspects pertaining to those factors, the Northern District of Ohio is clearly the most efficient forum for this action to proceed if at all. When assessing "trial efficiency and expense to the future system", transfer to the Northern District of Ohio is favored. According to the Federal Judicial Caseload Statistics, the average length of a civil case from filing to trial during 2004-

2009 in the Northern District of Ohio was between 17-23 months, whereas it is between 29-34 months in the Western District of Pennsylvania. (Ex. 5: Federal Judicial Caseload Statistics). Based upon these factors and all other analysis in this Brief, the Northern District of Ohio would be the most expeditious venue and would promote judicial efficiency. Simply put, this case should proceed (if at all) in Ohio.

## IV. CONCLUSION

The factors under §1404(a) clearly weigh in favor of transferring this lawsuit to the Northern District of Ohio, Toledo Division. A relator's residence – by virtue of its recent entity formation – has little or no weight given the *qui tam* nature of this action. All other factors point to Ohio as that is where the claims giving rise to this action arose. This Court should transfer this matter to the Northern District of Ohio, Toledo Division, for the convenience of the parties, convenience of the witnesses, and in the interests of justice.

Respectfully submitted,

s/ *Gary C. Furst*

Gary C. Furst (*pro hac vice*)
(gary.furst@btlaw.com)
Adam L. Bartrom (*pro hac vice*)
(adam.bartrom@btlaw.com
BARNES & THORNBURG LLP
600 One Summit Square
Fort Wayne, IN 46802
Telephone: (260) 423-9440
Facsimile: (260) 424-8316

AND

Kimberly A. Brown (Pa. I.D. #56200)
(KBrown@thorpreed.com)
THORP REED & ARMSTRONG, LLP
One Oxford Centre, 14th Floor
301 Grant Street
Pittsburgh, PA 15219
Telephone: (412) 394-2323
Facsimile: (412) 394-2555

ATTORNEYS FOR DEFENDANT,
THE OHIO ART COMPANY

**CERTIFICATE OF SERVICE**

I hereby certify that a true and copy of the foregoing **Brief in Support of Motion to Transfer Venue Under 28 U.S.C. §1404(a)** was filed and served electronically via the Court's CM/ECF system this 28th day of April, 2010, upon the following:

David G. Oberdick, Esquire
Tony J. Thompson, Esquire
MEYER, UNKOVIC & SCOTT, LLP
1300 Oliver Building
Pittsburgh, PA 15222

*s/ Gary C. Furst*
One of the Attorneys for Defendant
The Ohio Art Company

FWDS02 97229v1