**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel., | ) | |
| and FLFMC, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:10-cv-00230-LPL |
| | ) | |
| OHIO ART COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION TO DISMISS COMPLAINT**

Defendant The Ohio Art Company (identified as "Ohio Art Company" above) (hereinafter "Ohio Art") respectfully submits this Brief in Support of its Motion to Dismiss the Complaint filed by FLFMC LLC ("FLFMC") under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.   Specifically, the *qui tam* Plaintiff, FLFMC, cannot establish standing because it has suffered no harm whatsoever, even if all of its allegations that the Etch A Sketch® was marked with an expired patent are true.   It is undisputed that:   FLFMC was formed in January of this year; this lawsuit was filed a mere nineteen (19) days after FLFMC was formed; and FLFMC and Ohio Art are not competitors.   Given this sequence of events and these undisputed facts, it is not surprising that FLFMC's complaint contains no allegations of harm or injury-in-fact.   For these reasons (among others), Ohio Art requests that the Court dismiss FLFMC's Complaint, in its entirety and with prejudice, because FLFMC does not have standing to bring this suit as it does not meet the case or controversy requirement of the U.S. Constitution

Art. III.   Even assuming constitutional standing existed, FLFMC cannot establish prudential

standing because its grievance (if any) is shared by every other United States citizen.[1]

Alternatively, Ohio Art moves to dismiss any and all claims in the Complaint for alleged

violations taking place before the five-year statute of limitations period because any such claims

fail as a matter of law under Fed. R. Civ. P. 12(b)(6).   If this case proceeds at all (and it should

not), the case should be restricted to the applicable limitations period.[2]

## I.    OVERVIEW AND FACTUAL BACKGROUND[3]

### A.    The *Forest Group* Decision and the Resulting "Cottage Industry"

In late 2009, the Federal Circuit decided <u>Forest Group v. Bon Tool Co.</u> and clarified that

the patent False Marking Statute (the "Statute") requires civil penalties on a "per article" basis.

590 F.3d 1295, 1304 (Fed. Cir. 2009) (citing 35 U.S.C. §292).   This "per article" basis coupled

with the Statute's $500 maximum penalty for each offense creates the possibility of staggering

monetary penalties.   <u>See</u> 35 U.S.C. §292(a) (providing fines shall be "not more than $500 for

every such offense.").   Because the Statute allows for a 50/50 split of the monetary penalty

---

[1] Contemporaneously with this Brief and related Motion, Ohio Art has also filed a Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a), because the balances of the conveniences weighs heavily in favor of transferring this case to the Northern District of Ohio. In the interest of judicial economy, Ohio Art respectfully suggests that the Court consider the Motion to Transfer first, so that the same district that hears the merits of the case can address the remaining substantive issues.

[2] Ohio Art has other defenses to FLFMC's lawsuit and will raise those defenses if the case is not dismissed in its entirety for lack of standing.   By way of example, Ohio Art may raise in the future that simply marking an article with an "expired" patent does not violate 35 U.S.C. §292 and may also assert that 35 U.S.C. §292 is not constitutional.

[3] The facts for this Brief are contained in FLFMC's Complaint (<u>Dkt. #1</u>), in public records regarding FLFMC (<u>Ex. 1</u>), in publicly-available information regarding FLFMC's law firm (<u>Ex. 2</u>), in the Affidavit of paralegal Rebecca D. Johnson (<u>Ex. 3</u>), and in the Affidavit of William C. Killgallon, Ohio Art's Chairperson (<u>Ex. 4</u>).   Exhibits 1-4 are attached to the accompanying Motion.

between the *qui tam* relator and the U.S. Government, there is unlimited possible personal gain for private plaintiffs/relators. Donald J. Rupert, <u>Trolling for Dollars: A New Threat to Patent Owners</u>, 21 No. 3 Intell. Prop. & Tech L.J. 1 (2009) (cited in <u>Forest Group</u>, 590 F.3d at 1303); <u>see also</u> 35 U.S.C. §292(b) (providing "one-half shall go to the person suing and the other to the use of the United States."). The recent decision effectively opened the gate for a stampede of false marking suits against manufacturers who market thousands, or even millions of patented products each year. Indeed, the <u>Forest Group</u> decision has created a cottage industry for plaintiffs to seek out and bring claims against patent-holders even if that plaintiff has suffered no concrete or particularized injury. According to one recent article, "more than 100 plaintiffs have filed false marking suites in 2010, on the heels of" the <u>Forest Group</u> decision. Nick Brown, <u>House Bill Seeks Amend False Marking Remedies</u> Law 360 (Mar. 26, 2010). This matter is one of those cases.[4]

B.     **The Relator/Plaintiff: FLFMC, LLC**

According to public records, FLFMC was organized on January 29, 2010, a mere 32 days after the Federal Circuit's decision in <u>Forest Group</u>. FLFMC was organized by Joshua M. Farber, Esq., who, according to his Internet biography is an associate attorney at the law firm of Meyer, Unkovic & Scott LLP of Pittsburgh, Pennsylvania. (<u>See Exs</u>. 1 & 2). Meyer, Unkovic & Scott LLC is also counsel of record for FLFMC in this lawsuit.

The nature of FLFMC's business is unclear. Ohio Art has searched public records yet has been unable to locate the names or identities of the members of FLFMC or a description of its business. (<u>Ex. 3</u>: Johnson Aff. ¶ 6). A search of the PACER system reveals that FLFMC has

---

[4] In response to this barrage of recently filed cases, the U.S. House of Representatives has proposed legislation which clarifies that a plaintiff asserting a false marking claim must have suffered competitive injury. <u>See</u> H.R. 4954. Pending legislation has also been proposed by the Senate. <u>See</u> S. 515.

filed at least six (6) other actions in the Western District of Pennsylvania alleging false marking

in violation of 35 U.S.C. §292.  (Id., ¶ 3):

| CASE NO. | DEFENDANT | DATE FILED |
|---|---|---|
| 2:2010-cv-00231 | EBSCO Industries, Inc., et al | 02/17/2010 |
| 2:2010-cv-00229 | ACE Hardware Corporation | 02/17/2010 |
| 2:2010-cv-00287 | WHAM-O, Inc., et al  (dismissed without prejudice and refiled as referenced below) | 03/02/2010 |
| 2:2010-cv-00420 | William Bounds, Ltd. | 03/29/2010 |
| 2:2010-cv-00435 | WHAM-O, Inc. (refiled for different patent) | 04/01/2010 |
| 2:2010-cv-00437 | T.F.H. Publications, Inc. | 04/01/2010 |

Though these cases involve different patents and different products, FLFMC is alleging that each

of these products are falsely marked after the expiration of their respective patents.  (Id., ¶ 4).

Interestingly, FLFMC has not sought injunctive relief in any of these alleged false marking

cases, but rather seeks monetary damages pursuant to 35 U.S.C. §292 as well as costs and

attorneys' fees to FLFMC.  (Id., ¶ 4).  Based upon the foregoing, FLFMC appears to be in the

for-profit business of initiating and litigating *qui tam* actions for alleged false marking against

various companies.

       In its entirety and excluding the "Prayer for Relief," FLFMC's Complaint against Ohio

Art is thirteen (13) paragraphs.  (Dkt. #1).  FLFMC's Complaint against Ohio Art is bare bones

and merely mimics the false marking statute.  In a conclusory fashion, FLFMC asserts that the

Etch A Sketch® toy "is marked with Patent No. 3,760,505," that the patent expired, and

"Defendant or its agents did so for the purpose of deceiving the public."  (Id., ¶¶ 9-13).

FLFMC's Complaint contains no allegations that it has suffered any damage or harm or that any

individual was duped into buying an Etch A Sketch®.

C.      **Ohio Art**

Ohio Art's principal business is manufacturing toys for children.  Among other things, it manufactures and sells the Etch A Sketch®.  (Ex. 4:  Killgallon Aff., ¶ 3).  The company sold the first Etch A Sketch® in 1960.  (Id.).  Ohio Art is an Ohio corporation with its principal place of business in Bryan, Ohio.  (Id., ¶¶ 7-8).  The company's headquarters are located at 1 Toy Street, in Bryan, Ohio.  (Id., ¶ 7).

Prior to this lawsuit, Ohio Art was unaware that FLFMC was an entity.  (Id., ¶ 6). Additionally, Ohio Art and FLFMC are not competitors.  (Id., ¶ 6).

## II.      ARGUMENT AND AUTHORITY

A.      **This Court Does Not Have Subject Matter Jurisdiction Because FLFMC Lacks Standing**

1.      **Standing in Federal Court**

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Common Cause v. Pennsylvania, 558 F.3d 249, 258 (3d Cir. 2009) (quoting DaimlerChrysler Corp., 547 U.S. 332, 341 (2006)).  "If a dispute is not a proper case or controversy, the courts have no business deciding it." Id. at 258 (citation omitted).  That case or controversy requirement is satisfied "*only* where a plaintiff has standing." Id. (emphasis added) (quoting Sprint Commc'ns Co. v. APCC Servs., Inc., 128 S. Ct. 2531, 2535 (2008)); see also Valley Forge Christian Coll., 454 U.S. 464, 471 (1982).  Standing has both constitutional and prudential components. Id. (citing Kowalski v. Tesmer, 543 U.S. 125, 128 (2004)).

Simply put, standing to sue in federal court is a threshold issue for a plaintiff to bring suit, an "irreducible constitutional minimum," and the burden of every plaintiff in federal court to prove.  In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 263 (3d Cir. 2009) (quoting Lujan,

504 at 560-561 (internal citations and select quotation marks omitted)); <u>see also</u> <u>Revell v. Port</u>
<u>Auth. of N.Y. & N.J.</u>, 321 Fed. Appx. 113, 116 (3d Cir. 2009).

**2.**     <u>**FLFMC Lacks Facial and Factual Standing to Bring This Action**</u>

FLFMC bears the burden of proving standing and because it is an issue of subject matter
jurisdiction and it cannot be waived. <u>Revell</u>, 321 Fed. Appx. at 116; <u>Storino v. Borough of Point</u>
<u>Pleasant Beach</u>, 322 F.3d 293, 296 (3d Cir. 2003)) (citation omitted). Rule 12(b)(1) of the
Federal Rules of Civil Procedure permits this Court to dismiss a lawsuit for lack of subject
matter jurisdiction. <u>Fields v. Pa. Dep't of Corr.</u>, 2006 U.S. Dist. LEXIS 27727, *3-4 (E.D. Pa.
May 5, 2006).   In determining whether FLFMC has standing, the Court "must consider its
specific allegations and the relief which it seeks." <u>Id.</u> (citing <u>City of Los Angeles v. Lyons</u>, 461
U.S. 95, 105-06 (1983)).

Additionally, the court must distinguish between facial and factual challenges to its
subject matter jurisdiction. <u>Fields.</u>, 2006 U.S. Dist. LEXIS 27727, *3-4 (citing <u>Mortensen v.</u>
<u>First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977)). "In a facial attack, a defendant
argues that the plaintiff did not properly plead jurisdiction" whereas "a 'factual' attack asserts that
jurisdiction is lacking on the basis of facts outside of the pleadings." <u>Fields</u>, 2006 U.S. Dist.
LEXIS 27727, at *3-4 (citing <u>Smolow v. Hafer</u>, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005) and
<u>Mortensen</u>, 549 F.2d at 891).   The level of inspection differs as explained by the Eastern District
of Pennsylvania:

> In a facial attack, a defendant argues that the plaintiff did not properly plead
> jurisdiction, and the Court must consider the allegations in the complaint as true.
> However, a "factual" attack asserts that jurisdiction is lacking on the basis of facts
> outside of the pleadings, and it invokes the Court's authority to consider any
> affidavits and other evidence submitted. For both categories of attack, a plaintiff
> has the burden of proving jurisdiction.

<u>Smolow</u>, 353 F. Supp. 2d at 566 (internal citations omitted).

6

As demonstrated below, FLFMC's Complaint fails to satisfy subject matter jurisdiction for facial and factual reasons. Facially, even assuming the truth of the allegations in the Complaint, FLFMC cannot establish constitutional or prudential standing through its thin pleading because it alleges no injury or harm whatsoever. Further, and more detrimental to FLFMC's position, there is no set of allegations which FLFMC can bring which would cure its insufficient pleading and establish proper standing because it has not suffered any injury. Given FLFMC's recently formed limited liability company status, it cannot assert any set of facts showing that it suffered a "concrete and particularized" injury ***nor*** can it allege such an injury was inflicted on the United States. As such, FLFMC's Complaint fails both facially and factually. Because FLFMC cannot carry its burden of establishing subject matter jurisdiction, it has no standing to bring this suit, and the action should be dismissed with prejudice.

**3.      FLFMC Does Not Have Constitutional Standing to Bring This Lawsuit**

In order to have constitutional standing, a plaintiff must adequately establish:

(1) an injury in fact (i.e., a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (i.e., a "fairly traceable" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is "likely" and not "merely speculative" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

Id. (quoting Sprint Commc'ns Co., 128 S. Ct. at 2535; Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (further quotation, alterations omitted)).

a.      FLFMC Has Not, Nor Can it, Pled an Injury-in-Fact

The first requirement – an injury in fact – is the "hard floor of Article III jurisdiction that cannot be removed by statute." Summers v. Earth Island Inst., 129 S. Ct. 1142, 1152 (2009); Stauffer v. Brooks Bros., 615 F. Supp. 2d 248, 253-254 (S.D.N.Y. 2009) (dismissing with

prejudice a false marking complaint because the relator (a lawyer) failed to establish standing).[5] "Unlike a traditional plaintiff, a *qui tam* plaintiff commonly suffers no injury himself." Brooks Bros., 615 F. Supp. 2d at 253-254.  A *qui tam* provision operates as a statutory "assignment" of the rights of another – generally the United States – and accordingly, a *qui tam* plaintiff may proceed in vindication of those rights provided the assignor – i.e., the government – has itself suffered an injury in fact causally connected to the defendant that is likely to be redressed by the court.  Vermont Agency of Natural Res. v. United States ex. rel. Stevens, 529 U.S. 765, 774 (2000) ("[T]he United States' injury in fact suffices to confer standing on [the relator]");  see also Brooks Bros., 615 F. Supp. 2d at 253-254.

To establish an injury-in-fact, FLFMC must allege "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Stalley v. Genesis Healthcare Corp., 2007 U.S. Dist. LEXIS 17452 (E.D. Pa. Mar. 12, 2007) (citations omitted)).  Because "[federal] judicial power exists only to redress or otherwise to protect against injury to the complaining party, . . . [federal jurisdiction] can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." Id.

The Brooks Brothers decision is compelling and analogous to the events giving rise to this lawsuit.  There, a patent attorney filed suit against Brooks Brothers for alleged false patent marking of bow-ties in violation of §292.  615 F. Supp. 2d at 250.  Like FLFMC here, the plaintiff's allegations related to an expired patent.  Though the plaintiff's complaint was close to forty pages long, he failed to allege with any specificity an actual injury to any individual

---

[5] As explained below, the Brooks Brothers decision is currently before the Federal Circuit.  See Stauffer v. Brooks Brothers, Inc, Appellate Docket Nos. 09-1428, -1430, -1453. The decision is consistent with the well-developed body of law addressed in this Brief regarding standing.

competitor, to the market for bow ties, or to any aspect of the United States economy.  Id. at 255.

The court held that the plaintiff failed to allege a "cognizable injury in fact to the United States

or such an injury to the public that has been assigned to him by the government, and therefore

held that he lacked constitutional standing to bring a claim under §292."  Id. at 255.  The court

noted plaintiff's allegations were made largely on "information and belief" and offered no factual

support for his allegations.  Id. at 252.  The court also made clear that even *qui tam* plaintiffs

"must satisfy the 'irreducible constitutional minimum' of standing."  Id. at 253 (citing Vermont

Agency, 529 U.S. at 771)).  Applying the facts to the constitutional standing requirements, the

court reasoned that the plaintiff's alleged injury was insufficient to establish an injury-in-fact to

the public and therefore, he did not have standing to bring suit on behalf of the United States.  Id.

at 255.  It further reasoned that:

> the complaint fails to allege with any specificity an actual injury to any individual
> competitor, to the market for bow ties, or to any aspect of the United States
> economy.  That some competitor might somehow be injured at some point, or that
> some component of the United States economy might suffer some harm through
> defendants' conduct, is purely speculative and plainly insufficient to support
> standing.

Id.  In light of plaintiff's thin pleadings with respect to the injury-in-fact requirement, the court

also found that the plaintiff failed to establish that Brooks Brothers' alleged "conduct *caused* an

actual or imminent injury in fact to competition, to the United States economy, or the public that

could be assigned to him as a *qui tam* plaintiff or be vindicated through this litigation."  Id.

(emphasis added).  Accordingly, the court held that the plaintiff lacked standing to proceed with

the lawsuit.  Id. at 256.

Much like the patent attorney who was the plaintiff in Brooks Brothers, FLFMC brings

this action on the heels of the Forest Group decision, and it seeks up to $500 for every Etch A

Sketch® that was marked with a patent.  (Dkt. #1).  However, when comparing these cases, the

facts here are even more compelling than in <u>Brooks Brothers</u>.  In <u>Brooks Brothers</u>, the plaintiff's complaint was forty pages long whereas FLFMC's complaint is a mere 13 paragraphs.  And, unlike FLFMC who has alleged no harm whatsoever, the <u>Brooks Brothers</u> plaintiff made generalized assertions that competition in the marketplace had been quelled by false marking. However, just like the plaintiff in <u>Brooks Brothers</u>, FLFMC has not alleged any injury to itself or even a competitor.[6]  Indeed, it is factually impossible for FLFMC to contend that it was injured by Ohio Art's alleged conduct when FLFMC had existed for less than twenty (20) days at the time that it filed this lawsuit.  <u>See</u> <u>Lujan</u>, 504 U.S. at 566 ("Standing is not 'an ingenious exercise in the conceivable . . . [but] requires . . . perceptible harm." (citations omitted)).  Moreover, FLFMC does not allege any injury to the United States resulting from the alleged false marking. The <u>Brooks Brothers</u> court found the failure to allege harm to the United States was particularly compelling when it dismissed the complaint for lack of standing.  Similarly, such failure to allege ***any*** harm upon any person or party (including the United States) demonstrates that FLFMC does not have standing to bring this case.

---

[6]  There is a strong argument that the use of "any person" in §292 was meant to include only competitors.  Section 292 of the False Marking Statute provides that "[a]ny person may sue for the penalty."  When applying the Lanham Act, for example, courts have routinely held that "person" refers to competitors with injured commercial interests and not consumers generally. <u>See</u>, <u>e.g.</u>, <u>Made in the USA Found v. Phillips Foods, Inc.</u>, 365 F.3d 278 (4th Cir. 2004) (holding "that a consumer does not have standing under the Lanham Act to sue for false advertising"); <u>ITC Ltd. v Punchgini Inc.</u>, 74 USPQ2d 1239, 1252 (S.D.N.Y. 2005).  The "any person" language of §292 was likewise meant to apply to competitors whose commercial interests have been injured.  <u>See</u> <u>Filmon Process Corp. v. Spell-Right Corp.</u> 404 F.2d 1351, 1355 (D.C. Cir. 1968) (stating that the provision is designed to protect the exclusiveness of the use of the invention granted by the patentee to protect their patent position, and as the only likely enforcer of it).  "It is well settled that Section 292 was intended to protect a patentee against the fraudulent use of his name or device and to prevent, for the purpose of deceiving the public, the use in advertising in connection with any article, words imparting that an application for patent had been made when no application had been made or if made, is not pending."  <u>Accent Designs Inc. v. Jan Jewelry Designs, Inc.</u>, 827 F. Supp. 957, 969 (S.D.N.Y. 1993).

Notwithstanding the strict standing requirements imposed by U.S. Supreme Court decisions and the recent <u>Brooks Brothers</u> decision,[7] FLFMC may rely upon the <u>Pequignot v. Solo Cup Co.</u>, 640 F. Supp. 2d 714 (E.D. Va. 2009)[8] decision which in a conclusory fashion intimated that a *qui tam* plaintiff has standing to bring a claim pursuant to §292. <u>Solo Cup,</u> 640 F. Supp. 2d at 720. The premise of this portion of the <u>Solo Cup</u> decision was that a §292 *qui tam* plaintiff might have constitutional standing based solely on an alleged violation of the law. <u>Id.</u> The court did not address in detail the standing issue. Rather, the court in <u>Solo Cup</u> focused on: (1) whether §292 was a *qui tam* statute; and (2) whether §292 violated Article II of the constitution. <u>Id</u>. at 720-728.

In any event, citation to the <u>Solo Cup</u> decision does not cure FLFMC's lack of standing here. As discussed above, the decision contains a passing reference to standing when ruling on other issues. Moreover, the <u>Solo Cup</u> court's position endorsing standing actually conflicts with the Supreme Court decisions and other authority discussed above. The <u>Solo Cup</u> court's reasoning incorrectly interpreted the United States Supreme Court's discussion of *qui tam*

---

[7] The <u>Brooks Brothers</u> case is currently on appeal before the Federal Circuit, and some courts have stayed proceedings pending the Federal Circuit's decision. <u>See</u>, *e.g.*, <u>Public Patent Found., Inc. v. Glaxosmithkline Consumer Healthcare, L.P.,</u> No. 2:09-cv-05881-RMB-RLE, Slip Op. (S.D.N.Y Feb. 17, 2010) (*sua sponte* staying false marking case and pending motions to dismiss for lack of constitutional standing in light "of the appeal currently pending in the Court of Appeals for the Federal Circuit of an order issue in <u>Stauffer v. Brooks Bros. Inc.,</u> . . . which raises the same legal question that is currently pending here."). Court may stay proceedings as part of its inherent power "to control the disposition of the cases on its docket with the economy of time and effort for itself, for counsel, and for litigants." <u>Landis v. North Am. Co.,</u> 299 U.S. 248, 254 (1936).

[8] The <u>Solo Cup</u> court ultimately granted summary judgment in Solo Cup's favor holding that the plaintiff could not show that Solo Cup acted with the intent to deceive. <u>See</u> <u>Pequignot v. Solo Cup Co.</u>, 646 F. Supp. 2d 790 (E.D. Va. 2009). The district court's summary judgment decision is currently on appeal before the Federal Circuit, Docket No. 09-1547.

standing under the False Claims Act in <u>Vermont Agency</u>.[9]   The court in <u>Solo Cup</u> contended that

the Supreme Court in <u>Vermont Agency</u> did not distinguish sovereign injury from proprietary

injury when in actuality it did.   <u>Id.</u> at 724, n.15.   The Supreme Court in <u>Vermont Agency</u>

reasoned that "the injury to its sovereignty arising from the violation of its laws (which suffices

to support a criminal lawsuit by the Government) and the proprietary injury resulting from the

alleged fraud" are different concepts.   <u>Vermont Agency</u>, 529 U.S. at 771.   Importantly, according

to the Supreme Court in <u>Vermont Agency</u>, ***only*** the proprietary injury could be assigned to a

private party for constitutional standing purposes.   <u>Id.</u> at 773 ("effecting a partial assignment of

the Government's damages claim").   However, <u>Vermont Agency</u> ***did not*** hold that a sovereign

injury could be assigned to a private party for constitutional standing purposes.   The <u>Brooks</u>

<u>Brothers</u> court noted that specific fact when it also distinguished the <u>Solo Cup</u> decision:

> Even assuming that a violation of the United States' "sovereign interest" in seeing the law followed could be an assignable interest potentially vindicated by a *qui tam* action, in order for section 292 to be violated, a defendant must not only have falsely marked an unpatented article but must have done so "for the purpose of deceiving the public." 35 U.S.C. §292. Accordingly, as noted above, absent an alleged injury in the form of deception to the public, a plaintiff has not alleged a violation of the law, and therefore there exists no corresponding harm to the United States' "sovereign interest." Thus, allegations such as plaintiff's that a defendant improperly marked an unpatented article as patented, standing alone, neither alleges a violation of section 292 nor pleads an injury in fact to the sovereign interest of the United States assignable to a *qui tam* plaintiff. Moreover, the Court doubts that the Government's interest in seeing its laws enforced could alone be an assignable, concrete injury in fact sufficient to establish a *qui tam* plainitff's standing. <u>See</u> <u>FEC v. Akins</u>, 524 U.S. 11, 24, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (An "abstract" harm such as "injury to the interest in seeing that the law is obeyed . . . deprives the case of the concrete specificity" necessary for standing) (collecting cases).

_____

[9] The False Claims Act ("FCA") contains provisions consistent with an assignee-assignor relationship between a *qui tam* plaintiff and the United States, because the United States has been directly financially defrauded.  For this reason, the FCA explicitly allows an individual to bring suit for the United States and in the name of the United States Government

Brooks Brothers, 615 F. Supp. 2d at 254, n.5.  A violation of §292 is this precise type of sovereign injury which does not seek to redress or deter acts of alleged financial fraud. Therefore, plaintiffs bringing §292 actions do not enjoy the same type of *qui tam* standing as a plaintiff under the False Claims Act.  Section 292 invokes the Government's sovereign interest where the False Claims Act protects the proprietary interest.  As such, plaintiffs bringing lawsuits under the False Claims Act (such as those in Vermont Agency) have standing without injury to themselves because they are protecting the proprietary interest of the United States. However, plaintiffs bringing §292 claims invoke (at best) only the sovereign interest and therefore must meet the regular standing requirements which include injury-in-fact.  Section 292(b) does not effectuate standing to those without injury.  As such, FLFMC is not an assignee of the United States as the plaintiffs were in Vermont Agency, and FMFLC cannot circumvent Article III standing by merely characterizing the action as "*qui tam*."  See, e.g., United States ex rel. Berge v. Bd, of Trustees, 104 F.3d 1453, 1458 (4th Cir. 1997) (stating that the government, as the real party in interest under the FCA, must still have suffered an injury in fact.).

> b.   Without an Established Injury-in-Fact, FLFMC Cannot Establish
>       Causation or a Redressable Remedy

FLFMC has not (and cannot) establish an injury-in-fact to itself or the United States. Without an established injury, the standing analysis need not go further.  Indeed, FLFMC cannot establish a causal link between an injury-in-fact and redressability because no injury-in-fact exists under the standing analysis.  For the same reason, FLFMC cannot show that a remedy is likely to redress their alleged injury – the third prong of the constitutional standing analysis. Even assuming that FLFMC incurred an injury-in-fact, it would still lack standing as the remedy that it seeks (50% of monetary penalties plus costs and attorney's fees) would not redress any

alleged harm resulting from false marking.  FLFMC did not request injunctive relief (nor did it in any other of its similar cases filed in this Court).   Rather, FLFMC is seemingly attempting to financially benefit from a perfect storm: a relatively forgotten statute coupled with a recent favorable decision from the Federal Court providing for large potential windfall financial recoveries.  Simply put, FLFMC is an entity with no interest in enforcing the law, but is rather seeking monetary damages for injuries that it never suffered.  Because FLFMC cannot show it has constitution standing, the Court should grant Ohio Art's motion to dismiss for this reason alone.

**4.**   **Even Assuming Constitutional Standing, FLFMC Cannot Overcome its Prudential Standing Shortcomings**

Even if FLFMC overcomes its burden of establishing constitutional standing (which it cannot), it must also demonstrate that it has prudential standing.   To establish prudential standing, FLFMC must show that it:  (1) asserts its own rights, not those of third parties; (2) it's claim is not a general grievance shared equally and generally by all or a large class of citizens; and (3) it's injury is within the zone of interests the statute or common law claim intends to protect. Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004).

The Supreme Court has routinely "refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches."  Valley Forge Christian Coll., 454 U.S. at 474-75 (quoting Warth v. Seldin, 422 U.S. 490, 499-500 (1975)).  The Supreme Court has held that "where large numbers of Americans suffer alike, the political process, rather than the judicial process, may provide the more appropriate remedy for a widely shared grievance."  Fed. Election Comm'n v. Akins, 524 U.S. 11, 23 (1998) (citing cases); see also Common Cause, 558 F.3d at 259-260 (citing Valley Forge Christian Coll., 454 U.S. at 482-83 (quotation, alteration

omitted; citing cases); <u>see also</u> <u>Massachusetts v. E.P.A.</u>, 549 U.S. at 516-17 ("We will not . . .

entertain citizen suits to vindicate the public's nonconcrete interest in the proper administration

of the laws."); <u>Lance v. Coffman</u>, 549 U.S. 437, 442 (2007) (per curiam) (noting that the "[t]he

only injury plaintiffs allege is that the law . . . has not been followed. This injury is precisely the

kind of undifferentiated, generalized grievance about the conduct of government that we have

refused to countenance in the past."); <u>Lujan</u>, 504 U.S. at 573-74 ("We have consistently held that

a plaintiff raising only a generally available grievance about government--claiming only harm to

his and every citizen's interest in proper application of the Constitution and laws, and seeking

relief that no more directly and tangibly benefits him than it does the public at large--does not

state an Article III case or controversy."); <u>Goode</u>, 539 F.3d at 322 (holding taxpayers lacked

standing to assert claims based upon generalized injury that all persons in Philadelphia suffered);

<u>Cortes</u>, 508 F.3d at 164 (holding voters and taxpayers lacked standing to assert a "generalized

grievance[] of concerned citizens"); <u>Taliaferro</u>, 458 F.3d at 185, 190 (holding homeowners

lacked standing to assert generalized challenge to local zoning ordinance); <u>Pub. Interest Research

Group of N.J., Inc. v. Magnesium Elektron, Inc.</u>, 123 F.3d 111, 120-21 (3d Cir. 1997) (holding

plaintiffs lacked standing to assert generalized claim that they were injured by knowing that

creek was being polluted)).

     FLFMC lacks prudential standing as it is merely asserting a generalized right to have the

False Marking Statute obeyed. <u>Common Cause</u>, 558 F.3d at 259-260 ("The abstract nature of the

harm--for example, injury to the interest in seeing that the law is obeyed--deprives the case of the

concrete specificity . . . which . . . prevents a plaintiff from obtaining what would, in effect,

amount to an advisory opinion.") (citing <u>Akins</u>, 524 U.S. at 23 (quotation omitted)).  Such an

attempt to enforce a generalized grievance shared by all United States citizens is the exact type of claim routinely rejected by the United States Supreme Court for lack of standing.

**B.**     **Any Attempt by FLFMC to Recover Alleged Damages Outside of the Five Year Statute of Limitations Fails To State A Claim Upon Which Relief Can Granted.**

A portion of FLFMC's Complaint allegations are time-barred as false marking claims under §292 are subject to a five-year statute of limitations.  Arcadia Mach & Tool Inc. v. Sturm, Ruger & Co., Inc., 786 F.2d 1124, 1125 (Fed. Cir. 1986 (citing 28 U.S.C. §2462).  FLFMC cites back to November 17, 1991 as the first alleged instance of false marking.  (Dkt. #1:  Pl.'s Compl., ¶ 11).  FLFMC did not file its complaint until February 17, 2010.  (Dkt. #1:  Pl.'s Compl.).  Therefore, none of the alleged violations that occurred five years prior to February 17, 2010 are actionable.  As a result, the Court should dismiss all claims based on alleged violations that occurred prior to February 17, 2005.

### III.     CONCLUSION

FLFMC's false marking claim is barred by their lack of standing.  For this reason alone, Ohio Art respectfully requests that the Court dismiss FLFMC's Complaint, in its entirety and with prejudice. Alternatively, and if this case proceeds at all, the Court should dismiss all claims based on alleged violations that occurred before February 17, 2005.

Respectfully submitted,


s/ *Gary C. Furst*
Gary C. Furst (*pro hac vice*)
(gary.furst@btlaw.com)
Adam L. Bartrom (*pro hac vice*)
(adam.bartrom@btlaw.com
BARNES & THORNBURG LLP
600 One Summit Square
Fort Wayne, Indiana  46802
Telephone:  (260) 423-9440
Facsimile:  (260) 424-8316

Kimberly A. Brown (Pa. I.D. #56200)
(KBrown@thorpreed.com)
THORP REED & ARMSTRONG, LLP
One Oxford Centre, 14th Floor
301 Grant Street
Pittsburgh, PA  15219
Telephone:  (412) 394-2323
Facsimile:  (412) 394-2555

ATTORNEYS FOR DEFENDANT,
THE OHIO ART COMPANY

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and copy of the foregoing **Brief in Support of Motion to Dismiss Complaint** was filed and served electronically via the Court's CM/ECF system this 28th day of April, 2010, upon the following:

> David G. Oberdick, Esquire
> Tony J. Thompson, Esquire
> MEYER, UNKOVIC & SCOTT, LLP
> 1300 Oliver Building
> Pittsburgh, PA  15222


> *s/ Gary C. Furst*
> One of the Attorneys for Defendant
> The Ohio Art Company

FWDS02 97276v1