IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., and FLFMC, LLC. | ) ) Civil Action No. 10-230 ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) JURY TRIAL DEMANDED |
| OHIO ART COMPANY, | ) ) Filed Electronically |
| Defendant. | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404**

Plaintiffs, by and through their undersigned counsel, respectfully submit the following Memorandum in Opposition to the Motion to Transfer filed by Defendant Ohio Art Company ("Ohio Art").

## I. INTRODUCTION

This is a cause of action for Defendant Ohio Art's false marking of a product referred to as the Classic Etch A Sketch® in violation of 35 U.S.C. Section 292, a *qui tam* statute. This matter is now before the Court on Ohio Art's motion to transfer to the Northern District of Ohio, Toledo Division, pursuant to 28 U.S.C. Section 1404. In support of its motion seeking to transfer, Ohio Art, while omitting any reference to its activities concerning its marketing and advertising of the Classic Etch A Sketch® within the state of Pennsylvania, attempts to disparage *qui tam* plaintiffs, such as Plaintiff Relator, FLFMC, LLC's ("FLFMC" or "Relator"), and argues that the interest of justice requires this case to be transferred. However, in FLFMC, LLC, ex rel. v. Ace Hardware Corporation, this Court denied an analogous motion to transfer in which the

defendant there raised many of the same issues[1] presented by Ohio Art in the present motion to transfer. 10-cv-0229 (W.D. Pa. May 7, 2010) (J. Schwab). Accordingly, Ohio Art's Motion should be denied.

The purpose of the false marking statute is to protect the public. See Forest Group, Inc. v. Bon Tool Co., 590 F.3d 1295, 1303-304 (Fed. Cir. 2009) (noting "[a]cts of false marking deter innovation and stifle competition in the marketplace."). To further that purpose, Section 292 contains a *qui tam* provision that allows a private party, known as a "relator," to bring suit on behalf of the United States. Id. In Bon Tool, the United States Court of Appeals for the Federal Circuit specifically rejected concerns against private party actions under the false marking statute, stating that: "By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking." Id. Accordingly, Plaintiff FLFMC's desire to help control Ohio Art's false marking by bringing suit as a relator is expressly sanctioned by Congress and the Federal Circuit and should have no bearing on the issue of Ohio Art's alleged violation of 35 U.S.C. Section 292.

## II. STANDARD OF REVIEW

Ohio Art's argument, as it relates to the private and public interest factors for this Court's consideration, is premised upon a standard that does not apply to this case. Though this case falls under the appellate jurisdiction of the Federal Circuit, Third Circuit precedent should apply to Ohio Art's motion to transfer because the motion does not address a substantive issue of federal

---

[1] In the Ace case, the defendant articulated additional factors, i.e., a case pending in another jurisdiction involving the same patent and false markings, and the need to travel across two other states to litigate in this District – yet, its motion was still denied.

law. Teva Pharm. Indus. Ltd. v. Astrazeneca Pharms. LP, 2009 U.S. Dist. LEXIS 75257, *3 n.10 (E.D. Pa. Aug. 24, 2009).

The Third Circuit has enumerated several public and private factors for district courts to consider when determining whether to grant a motion for a transfer of venue.

> The private interests include: (1) plaintiff's choice of forum; (2) defendant's choice of forum; (3) where the claim arose; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) "the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; and (6) "the location of the books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." The public interests include: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) judicial familiarity "with the applicable state law in diversity cases." While examining these factors, courts must be mindful that the plaintiff's choice of forum deserves great weight.

Id. at *3, quoting, Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d cir. 1995). Applying this standard, Judge Schwab of this Court, in FLFMC, ex rel. v. Ace Hardware Corp., determined that transfer of a similar *qui tam* action by FLFMC was not appropriate and denied a similar motion for transfer in that case. 10-cv-0229, *3 (W.D. Pa. May 7, 2010) (J. Schwab) ("[defendant] has not offered any good reasons to counter the usual judicial deference to a plaintiff's choice of forum.") A true and correct copy of the Order of Court is attached hereto and incorporated herein by reference as Exhibit "A".

Rather than applying the above standard, Ohio Art places substantial emphasis upon several Federal Circuit decisions which granted motions to transfer under the Fifth Circuit's approach to Section 1404. See Defendant's Brief In Support of Motion to Transfer Venue Under

28 U.S.C. § 1404(a) ("Brief In Support"), pp. 8, 11-13, citing In re Hoffman-LaRouche, 587 F.3d 1333 (Fed. Cir. 2009); In re Grenentech, 566 F.3d 1338 (Fed. Cir. 2009); and In re TS Tech USA, 551 F.3d 1315 (Fed. Cir. 2008). There are significant differences between the Fifth and Third Circuit's analysis of private and public interest factors under Section 1404. The private interest factors under the Fifth Circuit's analysis include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive. TS Tech, 551 F.3d at 1319.

Notably, the Fifth Circuit's focus upon the cost of attendance for willing witnesses is not easily reconcilable with the Third Circuit's presumption that party witnesses will appear, and the related instruction that transfer may be appropriate only to the extent that the witnesses may actually be unavailable for trial in one of the fora. Jumara, 55 F.3d at 879. Moreover, when addressing the inconvenience of the witnesses and parties, the Fifth Circuit applies the "100-mile" rule, which requires that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." Grenentech, 566 F.3d at 1343. Conversely, the Third Circuit does not recognize nor apply a venue rule based solely upon a particular distance. Yet, Ohio Art, relying upon Fifth Circuit law, argues that the distance its potential **party witnesses** may have to travel should weigh in favor of transfer of this case. Brief In Support, p. 11-12 (emphasis added). As explained more fully below, and consistent with the decision reached by this Court in FLFMC v. Ace, Ohio Art's motion to transfer, when interpreted under the Third Circuit's approach, should be denied.

4

## III. TRANSFER UNDER 28 U.S.C. § 1404 IS IMPROPER

Ohio Art has not met the substantial burden the Third Circuit placed on it of establishing the need for transfer. See In re United States, 273 F.3d 380, 388 (3d. Cir. 2001) ("the burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer.") quoting Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d cir. 1995). Section 1404(a) is intended to place discretion in the District Court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness' ... A motion to transfer under Section 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). The district court "should not grant a motion to transfer unless the moving party can demonstrate that the balance of interests strongly favors a change in venue." Quezada v. Darden Restaurants, Inc., 139 F. Supp. 2d 666, 667 (W.D. Pa. 2001) (emphasis added). Because none of the relevant factors strongly favor the Northern District of Ohio, Toledo Division, over this Court as the proper forum, Ohio Art's motion to transfer should be denied.

### A. The Relevant Private Factors Weigh Against Transfer

#### 1. The Parties' Choice of Forum

Ohio Art argues that Plaintiffs' choice of forum should not be given any deference in this case given the *qui tam* relator status of FLFMC. Plaintiffs' choice of venue, however, should not be lightly disturbed. Jumara, 55 F.3d at 879. This is especially true when, as here, Relator's choice is its home forum. See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd., 2009 U.S. Dist. LEXIS 85976 (2009).

Ohio Art's suggestion that Relator's choice of forum should be afforded little deference in this case because of its *qui tam* relator status, is directly at odds with the Federal Circuit's interpretation of Section 292. In <u>Bon Tool</u>, the Federal Circuit Court, in reference to individuals who create entities to bring *qui tam* actions in false marking cases, unequivocally stated that "[r]ather than discourage such activities, the false marking statute explicitly permits *qui tam* actions. By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking." 590 F.3d at 1304-05. More recently, and as previously noted, in <u>FLFMC, LLC, ex rel. v. Ace Hardware Corp.</u>, 10-cv-0229 (W.D. Pa. May 7, 2010) (J. Schwab), this Court rejected a similar argument and gave deference to FLFMC's choice of forum, notwithstanding its *qui tam* status.

In its brief, Ohio Art otherwise asserts that this Court should "alter the plaintiff's choice of forum if the relevant factors **tilt** in the defendant's favor," Brief In Support, p. 8, <u>citing</u> <u>Ferrari Importing Co.</u>, 2009 U.S. Dist. LEXIS 110742, *10 (W.D. Pa. Nov. 27, 2009)( (J. Lenihan) (emphasis added), thereby suggesting that its assertion that this District is not connected to the events at issue is sufficient to warrant a transfer of this action. However, this Court's decision to transfer the action in <u>Ferrari</u> was premised upon more than the alleged lack of a direct connection to this District, rather, the Court gave significant consideration to the: (1) conservation of the other fora's judicial resources given the significant time previously expended by the other fora in learning about the products and the parties' history; and (2) the likelihood that defendant's related litigation in the other fora would require the presence of most of the same defense witnesses placing a greater burden on all witnesses to travel to two different foro to testify

regarding similar issues[2]. Id. at *7. Unlike Ferrari, in this case, no other jurisdiction has expended any judicial resources addressing any of the issues involved in this case and there are no related actions pending in another fora that would require the witnesses of Ohio Art to testify in two different fora. Thus, Plaintiffs', and more specifically Relator's, choice of forum should be afforded deference

Ohio Art has expressed a preference for the Northern District of Ohio. However, such preference alone does not justify a transfer. Instead, Ohio Art's preference must be balanced with the preference of the Relator. With such balancing, this factor weighs in favor of Relator as "it not only brought suit in this district, but it also resides here." Carnegie Mellon Univ., supra at *6. Moreover, "[d]efendant's preference is entitled to considerably less weight than [p]laintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." EVCO Technology, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005) (citing, Superior Precast, Inc. v. Safeco Ins. Co. of America, 71 F. Supp. 2d 438, 446 (E.D. Pa. 1999) (noting that if the factors presented by both parties are in equipoise, transfer is not appropriate)).

### 2. Where the Claim Arose

Ohio Art argues that this factor weighs in favor of transfer on the assumption that the only place where Plaintiffs' claims could have arose is within the state of Ohio, where the alleged marketing and advertising of the Classic Etch A Sketch® and where decisions made regarding the product took place. Ohio Art also argues that the fact that it has sold the Classic Etch A

---

[2] Additionally, the Ferrari Court, in declining to apply the First Filed Rule, noted that the Plaintiff's conduct partially suggested an improper motivation in bringing suit in this District. Ferrari, 2009 U.S. Dist. LEXIS 110742, at *5.

Sketch® in this District is irrelevant for transfer purposes because its products have been distributed in all fifty states[3]. Ohio Art improperly focuses upon the decision making/intent-to-deceive element of Section 292 and fails to give adequate credence to its potential liability relating to the actual marking upon and advertising of the Classic Etch A Sketch®.

Under Section 292, liability is imposed for separately "mark[ing] upon," "affix[ing] to," as well as for "us[ing]" the patent in advertising. Presidio Components, Inc. v. Am. Tech. Ceramics Corp., 2010 U.S. Dist. LEXIS 36127 (S.D. Cal. Apr. 13, 2010) (distinguishing defendant's use of the patent in advertising as a violation of Section 292.) See also 35 U.S.C. § 292(a) ("Whoever **marks upon, or affixes to, or uses in advertising** in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public...shall be fined not more than $500 for every such offense.") (emphasis added). In this case, Plaintiffs have alleged that Ohio Art has advertised and sold the infringing product in this district. Complaint, ¶¶ 6, 9, 12. See Accent Designs v. Jan Jewelry Designs, 827 F. Supp. 957, 965 (S.D.N.Y. 1993) (noting invoices bearing a patent legend qualified as advertising under Section 292.); Blank v. Pollack, 916 F. Supp. 165, 173 (N.D.N.Y 1996) (evidence of defendant falsely advertising products as "patented," with knowledge that previous patent did not cover defendant's product formed basis for Section 292 claim).

---

[3] Compare, Teva Pharm. Indus. Ltd. v. Astrazeneca Pharms. LP, 2009 U.S. Dist. LEXIS 75257, *5 (E.D. Pa. Aug. 24, 2009) (Noting if defendant's product is sold throughout the United States and does in fact infringe upon the respective patent, "such infringement occurs nationwide, and plaintiff's claim can be said to have arisen both in this district...(and, likely every other district in the United States.)"

In Smith Welding Equipment Corp. v. Pearl, 21 F.R.D. 196, 197 (W.D. Pa. 1956), the District Court determined that when Congress used the words 'use in advertising' within Section 292 that the offense "with regard to advertising was committed in the **place where the advertising was used or the literature was actually circulated as opposed to the place of printing**." (emphasis added). Moreover, Ohio Art has asserted that the Classic Etch A Sketch® is currently manufactured overseas. See Brief In Support, p. 5. In light of the allegations relating to Ohio Art's advertising within this District and its acknowledgment that the Classic Etch A Sketch® is manufactured ("marked upon") overseas, all the facts giving rise to Plaintiffs' lawsuit have not occurred exclusively within the State of Ohio. Accordingly, Ohio Art has failed to establish a substantial need to transfer under this factor.

### 3. The Convenience of the Parties

Ohio Art argues that, since the physical location of its officers, witnesses, evidence and other documents is located outside of this District, this factor weighs in favor of a transfer. The Third Circuit, however, has instructed that the proper inquiry is the convenience of the parties "as indicated by their relative physical and **financial condition**." Jumara, 55 F.3d at 879. (emphasis added).

As concerning the parties' relative physical locations, there is no dispute that each party would doubtless find it more convenient to litigate in its home district. Yet, Ohio Art argues that this case should be transferred because all of the relevant evidence and witnesses is located outside of this district. Tellingly, though, Ohio Art, which is located right next door to Pennsylvania, has not alleged that it is incapable of producing the relevant evidence and witnesses within this District. Moreover, it is likely that most of the relevant evidence can and

will be produced electronically. Accordingly, the physical location of the parties is a neutral factor.

As concerning the parties' relative financial conditions, Ohio Art has not proffered any arguments regarding its financial ability, or inability, to litigate in this District – and instead argues only that having to litigate in this forum would disrupt its business activities. On its website, however, Ohio Art boasts that "throughout the last 100 years" the company's "world famous Etch A Sketch [] has endured more than 45 years, [and] sold over 150 million units across the globe." OhioArt.com, Press Room, http://www.ohioart.com/press/100th%20Anniversary.pdf (last visited May 10, 2010). A true and correct copy of the press release is attached hereto as Exhibit "B." With such a longstanding history of success, clearly Ohio Art has the financial means to litigate within either District. Relator, on the other hand, is a newly formed Pennsylvania limited liability company of modest means. As such, this factor should weigh in Plaintiffs' favor. See Carnegie Mellon Univ., supra at *10 (finding this factor favored the not-for-profit educational institution when compared to the publicly-traded defendants with global operations.); Shreiber v. Eli Lilly & Co., No. 05-CV-2616, 2006 U.S. Dist. LEXIS 13477, *32-33 (E.D. Pa. March 27, 2006) (favoring a small local business over the multi-billion dollar corporation with interests and activities spanning the globe); FLFMC, LLC, ex rel. v. Ace Hardware Corp., 10-cv-0229, *2 (W.D. Pa. May 7, 2010) (J. Schwab) (considering comparison of private interest factors between a large corporation and FLFMC to be a "wash").

### 4. Convenience of the Witnesses and the Location of Books and Records

Ohio Art argues that because there are no documents, information or witnesses in this District, this factor should weigh in its favor. Given the presumption that party witnesses will appear, the Court should confine its analysis to the convenience of the non-party witnesses, and "only to the extent that the witnesses **may actually be unavailable for trial** in one of the fora." Carnegie Mellon Univ., supra at *11-12) quoting Jumara, 55 F.3d at 879. (emphasis added).

Ohio Art has not alleged that any of the potential non-party witnesses would be unavailable for trial in either forum. Thus, Ohio Art's argument is of little significance. Likewise, Ohio Art's argument regarding its books and records is of little import, given Ohio Art's failure to allege that it would be unable to produce its documents and records within this District. Ohio Art has not alleged that there is such a significant volume of documents that it will be required to produce in its defense that it would be encumbered by litigation in this District. Accordingly, Ohio Art has failed to establish a substantial need to transfer to the Northern District of Ohio and its motion to transfer should be denied.

### B. The Relevant Public Interest Factors Favor Against Transfer

Since the dispute between the parties arises under Federal law, the following public interest factors are not applicable to this case: the enforceability of the judgment, public policies of the fora, and familiarity of the trial judge with the applicable state law. See Samsung, 524 F. Supp. 2d at 633.

### 1. Jury Duty/Ohio's Interest in Policing Its Own Corporations

Ohio Art argues there is simply no local interest in resolving this dispute here, Ohio is the center of gravity in this case[4], and Ohio has a local interest in the conduct and operations of one of its resident corporate citizens and employers. Because this factor overlaps with factors previously discussed, namely where the claim arose and the convenience of the parties, the Court should limit its focus to the interests of local judges and juries in events in their community. See Samsung, supra at *16 (To avoid "double counting" the same facts, the Court will not reconsider the convenience of the parties and the witnesses in the two Districts.); L.G. Elecs. Inc. v. First Int'l Computer of Am., Inc., 138 F. Supp. 2d 574. 592 (D. N.J. 2001). While acknowledging the interest of the citizens of Ohio to resolve the interests of one of its corporate residents, Plaintiffs submit that such interest is equal, if not less than, the interest in preventing Pennsylvania residents from being deceived by Ohio Art's false marking. Further, as noted by the District Court in Teva:

> a patent dispute ... does not implicate internal corporate governance matters or local issues peculiar to [Ohio]. Instead, this case involves a patent, granted by the federal government that applies equally throughout the United States. The court fails to see how a patent holder's state of incorporation necessarily has a greater interest in a patent suit than does another state in which the patented product is also commonly found.

2009 U.S. Dist. LEXIS 75257, at *8. The same principles should equally apply with respect to false marking claims. Finally, this Court has expressed an interest, through adoption of its Local

---

[4] For the reasons discussed in Section A2, supra, Ohio is not the center of gravity.

833833.4

Patent Rules, in review and adjudication of patent-related litigation. Accordingly, this factor is neutral at best[5].

### 2. Ohio Art's Business Interruption

Without citing to any supporting case law, Ohio Art argues that since its business operations will be effected if this litigation is not transferred that this factor weighs in favor of transfer because FLFMC's business operations would not be interrupted. However, the purpose of a venue transfer is not to shift inconvenience from one party to another." EVCO Technology, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005) (citing, Superior Precast, Inc. v. Safeco Ins. Co. of America, 71 F. Supp. 2d 438, 446 (E.D. Pa. 1999) (noting that if the factors presented by both parties are in equipoise, transfer is not appropriate)). Accordingly, Ohio Art has failed to establish a substantial need to transfer to the Northern District of Ohio and its motion to transfer should be denied.

### 3. Judicial Efficiency

Though the Northern of District of Ohio's average length of a civil case from filing to trial during 2004-2009 was less than the average length of a civil case in Western District of Pennsylvania for the same period, this factor does not strongly favor a transfer in this action, especially where Ohio Art's false marking of products takes place in all 50 states. See FLFMC, LLC, ex rel. v. Ace Hardware Corp., 10-cv-0229, *3 (W.D. Pa. May 7, 2010) (J. Schwab) ("As to the public interests, since the dispute between the parties arises under federal law and since

---

[5] A transfer in this case could influence and negate the interests of this Court in retaining jurisdiction in other types of patent cases.

833833.4

[defendant's] business and alleged false marking of products takes place in all 50 states, the Court finds no significant differences between prosecution of the lawsuit in Pennsylvania versus in [the other fora].")

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully requests that Ohio Art's Motion to Transfer be denied.

Respectfully submitted,

By:   s/David G. Oberdick
    David G. Oberdick, Esquire
    Pa. I.D. No. 47648
    Email: dgo@muslaw.com

    Tony J. Thompson, Esquire
    Pa. I.D. No. 204609
    Email: tjt@muslaw.com

    Meyer, Unkovic & Scott LLP
    535 Smithfield Street, Suite 1300
    Pittsburgh, PA 15222
    (412) 456-2800

    Attorneys for Plaintiffs

Dated:   May 13, 2010