IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel., and FLFMC, LLC | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-230 |
| | ) | |
| OHIO ART COMPANY, | ) | Magistrate Judge Lisa Pupo Lenihan |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. CONCLUSION**

For the reasons set forth below, the Defendant's Motion to Transfer Venue Under 28 U.S.C. § 1404(a) be granted in the form of transfer of this action to the United States District Court for the Northern District of Ohio, and its Motions to Dismiss will be denied as moot.[1]

---

1. Defendant has also (a) moved to dismiss for lack of standing under Article III of the Constitution because Plaintiff lacks standing and (b) moved to dismiss to the extent Plaintiff seeks damages beyond a five-year limitations period. See Stauffer v. Brooks Brothers, Inc., 615 F.Supp.2d 248 (S.D.N.Y. 2009) (granting Motion to Dismiss and concluding that *qui tam* plaintiff failed to meet Article III standing requirements in absence of allegation of specific causally-connected injury to either individual competitor or some aspect of United States economy) (on appeal to the Federal Circuit). Compare Pequignot v. Solo Cup Co., 640 F.Supp.2d 714 (E.D. Va. 2009). See also San Francisco Technology, Inc. v. Adobe Systems, Inc., 2010 WL 1463571, *1 (N.D. Cal. Apr. 13, 2010) (staying *qui tam* actions brought by plaintiff incorporated to pursue potential statutory claims, pending resolution of the threshold issue of standing on appeal to the Federal Circuit). Although this Court finds the reasoning of the Stauffer Court sound and persuasive, it need not reach the questions of whether to dismiss, or *sua sponte* stay, this case where transfer is clearly appropriate.

**II. BACKGROUND**

This case is an *qui tam* action for violation of the False Marking Statute (the "FMS"), 35 U.S.C. § 292, brought by Plaintiff FLFMC, LLC, which appears to have been recently incorporated in Pennsylvania, by Pennsylvania lawyer(s), to pursue statutory penalty proceeds potentially available under the FMS when a manufacturer intentionally and fraudulently or deceptively continues to include patent information on its merchandise after the patent's expiration date.  More particularly:

Section 292 prohibits marking an "unpatented article" with words "importing that the same is patented, for the purpose of deceiving the public."  Thus, it includes, on its face, a requirement of fraudulent or deceptive intent.  See also Contech Labs, Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005) (observing that statute is not one of strict liability).

Late last year, the Federal Circuit held that the patent False Marking Statute imposes up to $500 in  penalty on a "per article" basis.  See Forest Group v. Bon Tool Co., 590 F.3d 1295 (Fed. Cir. 2009).  And the law's *qui tam* provisions permit private citizens to sue companies who may be in violation, and to split 50/50 any damages with the federal government.  Not surprisingly, numerous FMS actions have been filed across the country in the wake of Forest Group, many (as here) by plaintiffs formed/incorporated or otherwise controlled by intellectual property lawyers.[2]

---

2. See generally, "Patent Litigation Weekly: Who is Driving the False-Marking Frenzy?", Corporate Counsel, May 31, 2010, reprinted at  http://www.law.com (also noting that bipartisan bills are pending in the House and Senate which would limit suits to competitors who have actually been harmed by false marks and would limit damages to compensation for the injury); Nick Brown, House Bill Seeks to Amend False Marking Remedies, IP Law 360 (Mar. 26, 2010); see also Senate Patent Reform Act of 2010 and H.R. 4954.

(continued...)

Defendant is a Northern Ohio corporation in the business of manufacturing children's toys, including the Etch-a-Sketch, which is marketed and distributed nationally, including in Pennsylvania, and the subject of this action.  All Ohio Art employees work in Bryan, Ohio; Defendant's material witnesses live in or near Bryan; and all relevant documents/records are maintained there.  All decisions regarding design, packaging, marketing and sale of Etch-a-Sketch were made in Bryan, Ohio.  Defendant maintains no real estate, offices, or operations in Pennsylvania.  The Etch-a-Sketch is currently manufactured overseas (in China) and distributed from West and East Coast warehouse locations in Los Angeles and Atlanta.  See Defendant's Brief in Support of Motion to Transfer at 5.

Plaintiff's claim is that Defendant violated § 292 of the FMS when it continued to include expired patent information on its Etch-a-Sketch.  It seeks money damages under § 292, and costs and fees.  Defendant's response is, among others, that this *qui tam* action is more properly before the Northern District of Ohio Court.  The Court concurs with the Defendant.   For reasons of convenience, justness, efficiency, and other reasons of private and public interest, Ohio is a more appropriate forum for this action by a recently-formed Pennsylvania litigation entity (a) against a long-established manufacturing business which has its principal place of business in Ohio, has all corporate employees located in Ohio, makes all relevant business decisions and forms

---

2. (...continued)
    Cf. "Patent Litigation Weekly" (asserting that FLFMC has filed seven (7) FMS lawsuits and that its state corporate records show that it is run from the Pittsburgh office location of patent lawyer Debra Parrish and represented by Pittsburgh law firm Meyer, Unkovic & Scott LLP); Defendant's Brief in Support of Motion to Transfer at 3 (indicating that records reflect incorporation of FLFMC on January 29, 2010 by Joshua Farber, an associate attorney at Meyer, Unkovic & Scott).

manufacturing and other contracts in Ohio, and generates, compiles and maintains all corporate records in Ohio; and (b) premised on alleged violations under Federal law.[3]

## III. ANALYSIS

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." The Court observes that subject matter and personal jurisdiction would be proper in either the transferor or the transferee district. See 28 U.S.C. § 1404(a).

In reviewing a motion to transfer from a proper venue pursuant to 28 U.S.C. § 1404(a), the factors examined by the Court include convenience to the parties and witnesses, and the interests of justice. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). The party seeking to transfer the case has the burden of establishing the justice of transfer. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995); id. at 875.[4]

---

3. Plaintiffs cite to a recent decision of this Court, denying an FLFMC Defendant's request for transfer. See Plaintiff's Memorandum in Opposition; FLFMC, LLC ex rel. v. Ace Hardware Corp., Case No. 10-cv-0229 (W.D. Pa. May 7, 2010) (J. Schwab). This two-page decision (directed largely to Defendant's Motion to Dismiss and denying its request for transfer with brief discussion) is, however, distinguishable both on its face (the Court observed that the "primary inconvenience of which [Defendant] complain[ed]" was the "perceived inconvenience to a non-party" that was located in neither this nor the requested forum, and was already going to have to travel for another litigation) and in its litigation history (e.g., Defendant neglected to raise a legally supported contention that Plaintiff's choice of forum should be given no or lesser deference in a *qui tam* case).

4. Plaintiffs correctly observe that the matter falls under the appellate jurisdiction of the Federal Circuit, but the Court, in consideration of transfer, looks to Third Circuit precedent. See Plaintiffs' Memorandum in Opposition at 2.

Under Jumara, the private interests include the parties' preferences, the convenience of the parties, the unavailability of witnesses for trial,[5] and the situs of books and records. Id. (citing 15 Wright, Miller & Cooper § 3848-3853).[6] See also American Littoral Soc. v. U.S. E.P.A., 943 F.Supp. 548, 550 (E.D. Pa. 1996). Applicable public factors include the enforceability of the judgment; factors that could make the trial easier, more expeditious, or less expensive; relative administrative difficulties pertaining to court congestion; "the local interest in deciding local controversies at home"; the public policies of the fora; and the familiarity of the trial judge with applicable state law in diversity cases. Jumara, 55 F.3d at 879 (citing Wright, Miller & Cooper § 3854).[7]

**Private Factors**

As Defendant thoroughly discusses, under the circumstances of this case, the factor most likely to favor FLFMC is its decision to file this action in its home district. In general, a plaintiff's choice of forum is given significant weight as reflecting either a home forum or

---

5. The convenience of witnesses has been considered a "particularly significant factor." Kahhan v. City of Fort Lauderdale, 566 F.Supp. 736, 739 (E.D. Pa. 1983).

6. Cf. Wright, Miller & Cooper § 3847 (providing general list of factors courts consider, including: plaintiff's choice of forum, where the claim arose, convenience of the parties, convenience and availability of witnesses, location of documents/sources of proof, local interest in deciding local controversies at home, and trial efficiencies/expense).

7. See also id. (noting that the courts should "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum") (citing Wright, Miller & Cooper, § 3847); id. (noting that decision to transfer under § 1404(a) involves multi-factor test in which forum selection is one facet of convenience-of-parties consideration); Elan Suisse Ltd. v. Christ, 2006 WL 3838237, *3 (E.D. Pa. Dec. 29, 2006) (noting that district courts have broad discretion "to adjudicate motions for transfer accord to an 'individualized, case-by-case consideration of convenience and fairness'") (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). Cf. Jumara, *supra*.

dispute-resolution preference.  See Am. Littoral Soc'y v. United States Envtl. Prot. Agency, 843 F.Supp. 548, 551 (E.D. Pa. 1996); Jumara, *supra* . It is, however, given less weight when fewer of the operative facts took place in that forum, and the defendant indicates a strong preference for another district.  See Gallant v. Trustees of Columbia Univ. in the City of New York, 111 F.Supp.2d 638, 647 (E.D. Pa. 2000).  Secondly, in a *qui tam* action the real party in interest is the United States and, accordingly, the relator's choice of venue is not entitled to the same level of deference.  See, *e.g.*, United States ex rel. v. Arkray USA, 2007 U.S. Dist. LEXIS 19325, *2 (N.D. Miss, 2007); United States ex rel. v. Regents of Univ. of California, 2002 WL 334915 (N.D. Cal. Feb. 25, 2002); United States ex rel. v. First Nat'l Bank of Boston, 625 F.Supp. 591, 594 (D.N.H. 1985) (plaintiffs' choice of forum "should be given relatively little weight" in a *qui tam* action); U.S., ex rel. v. Bates East Corp., 1996 U.S. Dist. LEXIS 10316 (E.D. Pa. 1996) (same).  Cf. Stauffer v. Brooks Brothers, Inc., 615 F.Supp.2d 248 (S.D.N.Y. 2009) (noting that *qui tam* provision operates as a statutory assignment of the rights of another, and relator can proceed in vindication of those rights).[8]  And thirdly, in this case, Plaintiff was apparently recently created in Pennsylvania by Pennsylvania lawyers to bring cases for alleged violations of the FMS.  It appears to exist for no other purpose and to conduct no other business in Pennsylvania.[9]  The law is clear that the location or convenience of litigation counsel does not

---

8. Plaintiff's citation to Bon Tool in support of its assertion that the *qui tam* nature of its case does not affect its entitlement to forum deference is in error.  See Plaintiff's Memorandum in Opposition at 6.  The Federal Circuit's holding that § 292 *permits* a *qui tam* action cannot be read as an endorsement of forum deference in such cases.  Plaintiff cites to no language in the opinion that supports its assertion, nor is there any.

9. Cf. Defendant's Reply Brief at 4 ("In the end, the only connection that FLFMC has to this forum is that FLFMC's counsel is located here and, as a result, it exists on paper here."). Cf. also
(continued...)

merit consideration in a discretionary transfer evaluation. See, *e.g.*, Solomon v. Cont'l Am. Life Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973); In re Volkswagen AG, 371 F.3d 201 (5th Cir. 2004). To give significant, as opposed to lesser, weight to Plaintiff's choice of forum in these circumstances would effectively permit circumvention of these parameters through the creation of a shell-corporation plaintiff.[10]

Relevant witness testimony is likely to encompass the patents, markings, marketing, and distribution of Etch-a-Sketch, including Defendant's intent to deceive. Such testimony will be provided largely by current and former employees of Ohio Art, who are working and residing in Ohio (approximately 60 miles from the Northern District of Ohio Courthouse and 300 miles from this Western District of Pennsylvania Courthouse). See Defendant's Brief in Support of Motion to Transfer at 11-12. Travel-related lost work time and expenses, as well as business disruptions occasioned by the absence of management personnel, would therefore be significantly reduced by transfer. Plaintiff does not assert the residence of any key witnesses in Pennsylvania and, as Defendant notes, Plaintiff's business would not impacted/interrupted by transfer, as it is solely in the business of litigation. Indeed, Plaintiff identifies no particularized

---

9. (...continued)
EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip., Inc., 397 F.Supp.2d 728, 730 (E.D. Pa. 2005) (concluding that plaintiff which existed only on paper in forum, was created to litigate patent issue, and had no established business activity in Pennsylvania, was less entitled to weight in choice of forum).

10. For similar reasons, Plaintiff cannot newly incorporate for the sole purpose of pursuing FMS litigation and plead a poverty-basis for forum preference under the "convenience of the parties" factor. Compare Plaintiff's Memorandum in Opposition at 10 ("Relator . . . is a newly formed Pennsylvania limited liability company of modest means. As such [*sic*], this factor [evaluating convenience with consideration of physical and financial condition] should weigh in Plaintiff's favor."); id. (proceeding to analogize, rather remarkably, Plaintiff to a non-profit educational institution).

transfer-related hardship whatsoever.[11]  Convenience is thus impacted in favor of transfer (as are practical considerations of efficiency).[12]

Similarly, the potentially extensive material documents - including corporate records regarding design, manufacture, marketing and sales, and other evidence, as well as the custodians of such records - are located in the Northern District Ohio.  Although some portion of these records may be transferrable in electronic form at lesser expense, given the time frame of the present claim (*i.e.*, as early as 1990) and the nature of some documents (*e.g.*: merchandise design and patent drawings and forms), many may not be.  Plaintiff identifies no relevant documents in Pennsylvania.  Thus, whatever the extent of the cost differential, the location of the relevant documents/records and related convenience and efficiencies also weigh in favor of transfer.

### **Public Factors**

The Court recognizes that Plaintiff's action is one for false marking, and that Pennsylvania, like all other nationwide states in which the Etch-a-Sketch is marketed and distributed (including Ohio), has an interest in protecting its citizens from harms occasioned by wrongful merchandise markings.[13]  Given the location of material witnesses and corporate

---

11.  Cf. Saint-Gobain Calmar, Inc. v. Nat'l Prod. Corp., 230 F.Supp.2d 655, 661 (E.D. Pa. 2002) (when transfer would aid moving party and not disadvantage opponent, transfer is appropriate).

12.  Cf. *supra* n. 10.  The Court also notes that, given the statutory requirement of intent to deceive, witness credibility is likely to be important if the case goes to trial.  It is more likely that live testimony could/would be assessed by a jury in Ohio than in Pennsylvania.

13.   Compare Teva Pharm. Inds. Ltd. v. Astrazeneca Pharms. LP, 2009 Dist. LEXIS 75257, *8 (E.D. Pa. 2009) (state of incorporation has no greater interest in patent suit than another state in which patented product is also commonly found) with Saint-Gobain Calmar, 230 F.Supp.2d at 660 (preferred forum is "center of gravity" in patent infringement claim, which is district where
(continued...)

records, these practical considerations of judicial efficiency favor transfer, and this Court finds other public factors (including, *e.g.,* local controversies, enforceability of the judgment, and familiarity with applicable law) neutral.

### Summation

For the above reasons, Defendant has met its burden by showing that the relative ease of access to sources of proof, related litigation costs and efficiencies, and the interests of justice weigh in favor of transfer to the Ohio District Court, which, on balance, is the more proper and convenient forum for this *qui tam* action brought on behalf of the United States.  See Koster v. American Lumbermen's Mutual Casualty Co., 330 U.S. 518 (1947) ("The ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice."); Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981); Lacey v. Cessna Aircraft Co., 862 F.2d 38 (3d Cir. 1988). Cf. Molnlycke Health Care AB v. dumex Med. Surgical Prds. Ltd., 64 F.Supp.2d 448, 456 (E.D. Pa. 1999) (concluding transfer to New York was appropriate where many records were retained there, location was more proximate to witnesses who would be deposed, and unquantified additional cost to plaintiff was insufficient to block transfer).

An appropriate order will be entered.

---

13. (...continued)
alleged conduct occurred, as well as the hub of activity around which production centered). Cf. FPC Corp. v. Uniplast, Inc., 994 F.Supp. 945, (N.D. Ill. 1998) (noting in false marking and advertising action that "[i]ntellectual property cases generally focus on the [defendant's] activities, . . . its employees, and its documents; therefore, the location of [its] place of business is often the critical and controlling consideration'") (citation omitted).

_____
LISA PUPO LENIHAN
United States Magistrate Judge


Dated: July 30, 2010